It's my understanding we have a student with us. Where are you from? Perryville. Perryville? We're both from Perryville, Missouri. Oh, okay. This is... I'm Kate. We can't hear you. I'm Kate. Kate? Like me, Kate? Are we related? I don't think so. Most of the cases in southern Missouri are related. You might be surprised. Where are you a student? St. Vincent. St. Vincent. Okay, that's great. Well, welcome to the court. Have a seat and join us. You're going to get to hear Mr. Dowling, our artist, when he's ready. Good morning, everybody. Good morning. May it please the court. Given the admission by Welz, who is the appellee in this case... Can you introduce yourself? I'm sorry, sir. Jay Dowling on behalf of the appellant, Alan Rupert, who is also here in the presence of the court today. I apologize. But given the admission by Welz, who is the appellee in this case, in their brief, that the trial court erred in dismissing count 1 and 2 of the Second Amendment complaint for quiet title, I believe the issue... Was it 1 and 2 or just 2? Well, he ultimately did both of them. He did them at different times. Right. With count 2 of the complaint, which is for quiet title, that was in February of 19 or February of 18. And in essence, what the court said was that since, Mr. Rupert, you do not have paper title, you cannot file a quiet title action, which goes against all of the case law. And I cited the Scales case, which is a 1950 Supreme Court case, which is fairly factually consistent with the present case here. But they agreed that that was error, right? I'm sorry? Your opponent has agreed that's error? Yes. All right. And that is on page 45 of their brief. So what that does is, I think, change the posture a little bit in terms of saying not whether or not this case should be remanded because I believe both parties now have said it should because of the error. But what instructions should the court give to the trial court upon the remand and reversal, at least in part, of that order of February of 2018, which dismissed count 2 of the complaint? It then goes on from, I guess, a procedural or historical standpoint that also in that time period, he denied a motion to dismiss the Wells's counterclaims that were brought by Rupert on the basis of the statute of limitations for adverse possession. In other words, under 735 ILCS 5-13101, Rupert alleged that since more than 20 years has passed, their right of reentry or their right of trying to claim reentry had lapsed and therefore they could not bring their counterclaims. The trial court denied that motion despite subsequently finding that the motion to dismiss their second affirmative defense of the statute of limitations was an improper application of the statute of limitations and, in fact, barred their claim. What was going on in the trial court's perspective is that Wells was bringing an action and as part of their action of the counterclaims, they asserted an affirmative defense that Rupert had an obligation to file a suit within the first 20 years that he was, within the first 20 years after the 20-year period had expired for the expiration of the statute of limitations under adverse possession. They wanted him to file it in the 20th year.   And they were not going to file a suit in the 21st year. Basically, within the 21st year or something like that. And they relied upon the clinical case and the court correctly ruled that, you know, the application of that or their interpretation of the application was 100 percent wrong. And so, you know, the trial court was not going to file a suit. And the court said, well, there is no obligation for Rupert in this particular case to necessarily ever file a suit to actually get a paper title. Now, historically what happens, and as you are probably aware with all the adverse possession cases, at some point in time maybe somebody raises an argument or an issue about, hold it, that's my land, and that's how these adverse possession cases typically come to light and therefore come before the court. So that was count one of the complaints, and it was an alternative to, well, if I'm not going to do quiet title or you're not going to let me do quiet title or I don't prove quiet title for whatever reason, I still have a right to try to prove that I now have adverse possession. I know. You said that, and that's probably true, but the complaint itself didn't say that. It didn't say in the alternative, but I understand. They were mirror images for all intents and purposes because of the case law on adverse possession. One of the issues that was coming up, of course, is adverse possession can be proved over any 20-year period. It doesn't have to be the last 20 years. And one of the bones of contention, of course, was the fact that in this particular case historically, Wells' predecessors in interest, at least that is in the record, was a coal company that transferred the land to a logger by the name of Cravens in 1997, and then Cravens transferred it to Rupert, excuse me, to Wells in 1998. They have no information or history or anything else that went down before 1997. A lot of the crux of both the quiet title action and even the adverse possession case was the fact that Rupert, since 1959, has owned and, well, owned, controlled, maintained, fulfilled all of the elements of adverse possession. And that's laid out not only with all of the affidavits that were submitted, but in the complaint itself, which under their motion, Wells' motion to dismiss under 2619, would then have been deemed admitted. All of those allegations would be deemed admitted. All of those allegations would have to be deemed true. All of the inferences that could be drawn from those allegations would also have to be deemed true. So that gets you into a paradox, I believe, with regard to the Court's dismissal of count one of the complaint on the Court's own motion. And that was in response to a motion for summary judgment that I had filed on behalf of Rupert, and a colloquy went on about what is the application of the law. The trial court gave me. I'm not sure what you're asking. The court did vote on its own motion. That is true. I was a little at odds as to why he was doing what he was doing. The only thing I could see in the record that would potentially serve a basis was his comments that the recitation of the law of adverse possession that I was giving that is actually set forth in my brief just couldn't be the law. The example he gave was that if he actually gave two of them, but one of them is he went out of the country for 20 years and I moved into his house, and he came back, you know, after the 20 years expired, would that mean that he has no rights and that title would have passed? And I suggested to them that, yes, that's exactly what that means because under the case law, if I have maintained something for 20 years and possessed it, I don't have to go to court and get a title. Title at least passes by operation of law and is actually the right of possession. There's no amendment of title that is necessary for me to establish the fact that I own the land, just the fact that I have possessed it. And the Joyner v. Jansen Supreme Court case from 1986 clearly outlines all of that as well, again, as all of the cases that I have cited. So... Do you think that the other side disagrees with you? Well, I think what they're trying to say, and at least what happened in, I believe it was the March or May hearing on the motion for summary judgment where the judge was trying, the trial judge was trying to set forth, okay, we're going to agree to these principles of law. And one of the principles of law that he was trying to get everybody to agree to was permissive use cannot be, or I'm sorry, possession of open land or vacant land is considered permissive, and we're going to start with that basis until you prove it otherwise. I don't believe that that is the law because there's a couple of issues. Granted, there's cases, and I would agree, if you and I make an express agreement, I will give you permission to use my land. That can never, ever ripen into adverse possession. However, when you don't give me permission, we don't even talk. I come in and I just take your land either because I mistakenly believe that my boundary line is in a certain spot or not because, again, Joyner v. Jansen says my belief as to whether or not I'm as vacant as my boundary doesn't matter for the adverse possession. They're focusing on a different section of the statute on the statute of limitations about open and vacant land, which is actually under 13-107 when you have color of title and you pay taxes and the land is open and unapproved, which is in the statute itself. But under 13-101, you don't see that language about vacant land being, the use of vacant land or the claim of vacant land being permissive. If that were the case, there would never be an adverse possession case because every piece of land in the statute is open and unapproved. And if it's permissive, you have to prove at least under count one of adverse possession by clearing and convincing evidence that you met all of the elements of adverse possession. You're not using the pay taxes, though.   I did not. I did not. Okay. Now, we never brought it up. I'm sure we paid taxes on whatever tax bill we had. We couldn't pay taxes if it's not shown that parcel is taxable to the other person. No, that is true. I mean, again, that is true. I'm sure we paid taxes on whatever was on our tax bill. And as the Court is aware, with adverse possession cases, even the deed description is irrelevant. It's the passing of possession of the land from one party to the next that can tack on your 20 years or to get your 20 years. In this particular case, Rupert's grandmother was the – and grandfather were the owners of record from 1959 all the way up until 2010, at which point his mother became the owner of record. Well, that's where I have a problem. Owners of record mean what's on the deeds and descriptions. That doesn't change. We're not entirely – I agree, but I'm trying to get to the next – You're arguing in terms of title, I thought. Well, it's kind of the next point, which is, of course, the adverse possession. If I possess something, regardless of whether or not it's in my deed description – Right. And I have done it so, and I take it – and let's say I just own it for – I use it for one year, and I pass it on to somebody, and we do that 20 different times. As long as that possession is passed on down the road to my successors, then that is a tacking that is available under the adverse possession case law that I have cited. It is well established, and it is the possession – and then the possession for 20 years, that transfers that right, hits the statute of limitations, which means they can't come back in and argue that, hey, that lands mine, give it back to me, because the bar has set. And the right of possession, and actually the legal title, the record title, has been extinguished by that 20 years of possession. All of that's, again, in the cases that I have cited. And that's not refuted in any way, shape, or form. What do you mean record title is extinguished? I'm sorry? I don't understand how you say record title is extinguished. The deed is still there, and the description is still there. Nothing says goodbye and cut something out. Again, I don't disagree. I think it's more of a philosophical sense. I mean, but it is the public policy, and it's in Joyner v. Hansen. It's in Hermes v. Fisher. It's in the other – and there's in Brandenhorst. All of these cases that I've cited, it starts off even in scales back in 1950 when they were talking about even just a quiet title action. It's the fact that the right of possession is gone. Title, at least by operation of law, transfers, even though the recorder's office still has a paper title there that says so-and-so owns it. You're just saying there's no legal – There's no legal basis. Yes, ma'am. Recorded title. Yes, ma'am. Don't disagree. Don't disagree. You know, but that's the one that got thrown out because of it. I understand. And then we get back into, like I said, discussion of the cases, but probably the bigger – you know, one of the bigger issues, of course, is – Mr. Powell, before we go there, I have a question. I understand that you want to complain against David. Yes, ma'am. Correct? Counts one and two. But there were a lot of other things in this order against David. Like he gave two 619 findings as to various permanent offenses, non-claims. What do you think the relief is that you've granted in this case, other than reinstatement? Well, kind of following up on your question that you gave in the Carr case, you know, what – The case before you. Yes. Okay. The fact that the appellate court can look at the record as a whole and grant a relief, and that was – that they believe is appropriate. And that's why I was saying, what instructions do you give the court on remand in this case? Can you be more specific? Certainly, ma'am. Why do you want your – Well, quite truthfully, what I believe should happen, given the fact that I also filed the – you know, in response to my motion for summary judgment on count one, he simply sua sponte dismissed it. But that was a reinstatement. Well, but given the – given the affidavits that are on file that are uncontested, in terms of the use, possession of the land from 1959 all the way up to 1997. So you want us to review your motion for summary judgment? Quite truthfully, I would think you would just grant it because it's an uncontested motion. Well, I think your opponent might have something to say about that. You know, the – Well, short of that, we've got a motion to dismiss defendant's second counterclaim, all five counts as denied with regard to count one, white title. He denies those, and yet then he dismisses it. Right. And it might be – Can you give me any specifics as to what you think should happen? I believe the motion to dismiss – that should be reversed as well with instructions. And this is something maybe I'm overreaching here a little bit with the court, but with instructions to actually grant the motion to dismiss the counterclaims as they apply to the disputed tract. And the reason I'm making that distinction is because part of their counterclaim deals with land that lies west of or outside of the disputed tract of land. So to the extent that they're saying that I'm trespassing on that land and not the disputed land, then I think you've got right to maintain that type of counterclaim or cause of action. Where the disputed tract is concerned, I believe the application of 13-101 prevents them from claiming any rights of reentry, rights of possession, rights of damages or anything to that disputed tract because the 20 years has, in fact, expired, and that bar is an absolute bar. And that's already been found by the appellate court – excuse me, by the trial court when the trial court granted my motion to dismiss their second affirmative defense on that basis of 13-101 or the application of 13-101. So do you think that the court wrote correctly when the court granted your motion to dismiss? The second affirmative defense. The second affirmative defense. Yes, ma'am, because that was purely the – Is there anything else the Court did right in this order according to the – Well, let's see. Unfortunately, I'd probably say no. Other than granting your second affirmative defense? Well, that would be it because obviously they dismissed the quiet title action and that's already been conceded by everybody. I think the bigger issue then becomes – Do you think the other side is going to stand up and say we should reinstate your complaint? I'm sure they're going to argue just the exact opposite. What they did in their brief is essentially argue that, yeah, the court messed up on count two, but it doesn't make a difference anyway because it's similar to count one and you were going to lose that one anyway, and you were going to lose it based upon this testimony from Bailey, who was a witness whose deposition transcript, and he was the gentleman who was working for the previous owner, Cravens, who was the logger, and basically came in and testified during deposition. Well, this dead guy told me X, Y, and Z or showed me X, Y, and Z, the dead guy being Elmer Rupert. They've alleged that Elmer Rupert is somehow – what he knew or what he said should be imputed to the Rupert family because he's simply Elmer Rupert, but he's not motivated. Are these cases jury cases? I'm sorry? You can ask for a jury on an adverse possession case. You cannot ask for a jury that I'm aware of in a quiet title action case. But that also gets into even, for instance, between the two complaints, kind of the standard of the burden of proof. If I'm claiming adverse possession and purely adverse possession, then there is a presumption, of course, that I'm admitting title in somebody else, and I have to prove by clear and convincing evidence that they don't have that title. Whereas if I'm trying to quiet title, I'm only saying title is established in me, even though it might have been by adverse possession, but the burden of proof issues are different even on that standard, where the court was trying to – the trial court was trying to apply just one standard. Rupert, you've got to prove everything by clear and convincing evidence. It's permissive until otherwise, you know. But then when does otherwise, you know, happen, so to speak? One other question. Yes, ma'am. Why was there a motion for only one brief set of statements? They were asserting that I brought – well, I guess two bases. One, they were asserting that I didn't appropriately answer the request to admit, and two, that I brought these actions, these calls of actions or continued to bring them, even though I knew they were unfounded or inappropriate given the facts of the case, is what I brought it down to. The court denied those. No, you are not. Thank you, ma'am. Thank you. Ms. Lorenz. Thank you, Your Honor. Ma'am, may I please support counsel? Natalie Lorenz, representing the Wells brothers, the defendants in this action. So I have several issues to get through in this case, and I disagree with nearly every point raised by opposing counsel. How about count two? Count two, yes. I think that Rupert is confusing quiet title and adverse possession. These are not two separate causes of action. Quiet title is the vehicle by which you make an adverse possession claim. So I think what the trial court was saying was, you know, sure, you can quiet – well, the trial court was saying, sure, you can quiet title to property acquired via adverse possession, but you still have to prove adverse possession to get there. What Rupert was trying to do with his quiet title count was say, I've made these allegations that I have title by adverse possession, but I don't have to prove adverse possession. I already have title. So now I'm going to put the burden of proof onto the record title owner to prove that I don't have title by adverse possession, which is completely inaccurate. The trial court has ruled that you can bring an action to quiet title in order to determine that. Yes, absolutely. How is that what count two was doing? Well, it's the same as count one, though. I mean, they're both the same thing. I know, but that wasn't the reason for the court's dismissal. But the reason – Mr. Downing, but it was in the alternative. Can you – can't you do that? No, not for adverse possession and quiet title. They're the same thing. It's the same exact cause of action. Quiet title is the vehicle by which you make an adverse possession claim. Well, what about Joyner v. Jansen? Was that an action to quiet title? Yes. And in order to get the – What's the distinction you're making? Why doesn't Joyner apply to this case? It does apply. But in order to get your title quieted, you still have to prove up your adverse possession claim. It doesn't change the burden of proof. But we are at the grieving stage. But 2619 admits all of the facts that a court can claim as complaint. Yes, it does. And I had, at that point, moved to dismiss Counts 1 and 2, both of them, on matters of law, completely separate from any factual issues, which there are many in this case, but just on a matter of law, completely deeming everything in the complaint admitted. Yes. Are you saying that they were duplicative then? Yes. It's the same claim. There is no difference in the burden of proof, whether you bring an adverse possession claim, title it, label it in the complaint as adverse possession, versus titling it quiet title in the complaint. They're the same exact thing. There is no difference in the burden of proof. And that, I think – What did your 2619 motion say? My 2619 motion was talking about something completely different. And I was taken by surprise when we got there that these claims were actually, I guess, meant to be something other than exactly the same thing. You know, whenever – Why is it you say then that you presume the quiet title action was intended to shift the burden of proof? Because what he's saying – what Rupert is saying is that whenever I have a quiet title claim, as opposed to an adverse possession claim, quiet title means I already have title. So I don't have to actually prove anything in order to – Am I arguing the complaint? I don't think that's what that's – That's what he argued over and over again before the trial court and in the reports of proceedings. What he's arguing is there is a colorable right of title as opposed to I have title. He's claiming I have a colorable right as opposed to if we're not a title state. Right. And I wouldn't disagree. A quiet title, that's going to raise the issue of whether his colorable right is truly – Right. So as long as he still has to prove his adverse possession claim by clear and convincing evidence, then the quiet title claim, that's fine as long as that's the understanding going into it. I think the trial court was – I think you're misunderstanding. My question is – Okay. A 2-619 motion attacks the complaint as a whole. Yes. As to whether it states a claim for which relief can be granted. Yes. The court said you can't get title by – you cannot get adverse possession or a claim by bringing this kind of action. And the Supreme Court says, yes, you can. So my question is why do you disagree with Janssen versus – or I'm sorry, Joyner versus Janssen? I don't disagree with Joyner versus Janssen, but I do think that there – How is it different from this case that would justify dismissal? So in this case, what I had moved to dismiss based upon was the statute of limitations based on the Klingel case. And as the court knows, it can affirm the trial court based on any reason available in the record, not necessarily based on the trial court's own reasoning. I don't think that was a proper statement what the court said about you can't bring an adverse possession claim as part of your quiet title. I think that you can. It's just that you can't thereby flip the burden of proof. But to get back to the 2-619 motion and the reason that I had moved to dismiss in the first place, it was based on the statute of limitations and the Klingel case. And the Klingel case is a Fifth District case. And what it involved was – it actually was a statute of limitations imposed upon the adverse claimant. And so the 20-year statute of limitations found in Section 101, which is the one at issue in this case, applied to an adverse possession claimant. The claimant in that case was bringing the adverse possession claim under Section 110, which is the tax issue, the seven years with payment of taxes. So if you think about that for a second, the statute of limitations from Section 101 applied to a statute of limitations or to an adverse possession claim based on an entirely different section in the Klingel case. So here, it's actually less attenuated than in Klingel because you've got Section 101, a 20-year statute of limitation on claims under 110. If it applies there, why wouldn't 101 also apply to adverse possession claims under 101 itself? It's less attenuated here than it was in Klingel. And a 20-year statute of limitations should be imposed on this claim. And so in Klingel, what happened... 20-year statute of limitations or seven? Twenty. So it was the adverse possession claimant had to make a seven-year, you know, period of possession. So at the end of the seven years, the 20 years on their claim started to run. And they didn't bring, or actually in that case, they ended up bringing the claim within that 20-year period. So that was appropriate. In this case, we've got the claimant indicating that they began, you know, alleging that they began this adverse possession in 1959, that it would have ripened therefore in 1979. So you've got 1979 to 1999 as your statute of limitations period, 20 years. And this case was brought, you know, as we know, long after 1999, way past that time period. So based on Klingel, you know, like I said, it's actually less attenuated in this case than it was in Klingel itself to have that statute applied. Another issue, one of the reasons that I moved to dismiss both Counts 1 and Count 2 legal issue, was that tacking is not permitted once adverse possession has been accomplished. Rupert's argument that his predecessors obtained title by adverse possession in 1979, if taken to its logical conclusion, doesn't establish title in Rupert now. So tacking adverse possessions is only necessary when the title to the parcel hasn't matured. Illinois law provides that if you already have title to property, you have to convey it by deed. So, and that's in City of Virginia v. Mitchell 2013 4th District case. So if Rupert's predecessors and interests had obtained title to the disputed tract by adverse possession by 1979, they should have transferred it by deed at that point. There's no need to tack if you've already obtained title. And then on a related note, as far as tacking, there's nothing to tack the adverse possession of the predecessors to. Rupert chose in this case, when faced with the motion for Rule 137 sanctions, chose to avoid making any allegation that he himself adversely possessed anything. He made a deliberate decision to rely on the acts of the predecessors and interests alone. There is no case law precedent that I can find, and I've done exhaustive research on this. There is no case law precedent for this where research that I've found revealed only cases in which the plaintiff seeking title by adverse possession actually adversely possessed something himself so he can tack to someone else if he doesn't have enough time on his own. I don't know how it's possible that Rupert could tack his possession onto that of his predecessors without actually having that possession himself. He's admitted that he himself has not adversely possessed anything at all. And I think what's happening here is Rupert is not actually trying to tack. What he's doing is he's trying to step into the shoes of his predecessors and interests, contrary to, of course, the doctrine of standing. As far as the dismissal of the adverse possession claim itself, Count 1, there are cases in the 5th District as well as the other districts that stand for the proposition that a trial court can sue a spot day, dismiss what it believes is frivolous claims. And the trial court made that determination in this case. Why did you file a motion for preliminary injunction? Did you file a motion for preliminary injunction? I did, yes, because Rupert... Did you do that on the block? I'm sorry? Did you file a complaint? Yes, yes, well, counterclaims, yes. Counterclaims were on file on behalf of my client at the time. And did you file a motion for sanctions right at the get-go as one of your first pleadings? Did I remember that correctly? I don't believe it was right at the get-go. I think it was... That's a legal word. Yeah, I believe that the complaint was filed in either April or May of 2016, and it was February of 2017 when I filed a motion for sanctions. So I remember there was some pleading issues. Yes. Okay, a little bit. What did the judge do with all of that, all those pleadings that were on file? Did he ever rule on those? No. The judge said he would review it later, at a later date, but it was not ruled on. Basically, the judge, in the record, agreed that it was not appropriate for the avoidance of the request to admit in the manner that it was done. I had sent out some requests to admit to Mr. Rupert. Instead of answering the request to admit, Mr. Rupert decided to amend his complaint to leave out all allegations of his own adverse possession of the property at issue, because what the request to admit we're trying to get at is, Mr. Rupert, I don't think that you've actually exclusively possessed anything, because my clients have been on this property this entire time they've owned it, for the last 18 years. Did you call those for hearing? Yes. And what did the court do with those? The court left it as nothing. The court didn't rule on it. The court said, I'll reserve ruling. So they didn't have to answer your request to admit? They eventually answered the request to admit by saying that their questions were not relevant because they had amended their complaint. I didn't know 216 said that. Did you ever push that? Yes, I did. And? And nothing happened. Okay. I was told that the ruling would be reserved for a later date. And I brought it up again. The same question I asked Mr. Dowling, and that is, what would leave for you actually steeping out of this order? You want it affirmed or what? Yes, affirm. You think this disposes of the whole case? It does, yes. If the court hypothetically would reinstate any court part of the complaint, whether it was count one, count two, what do you think should happen with the rest of the order? Should the entire order be vacated or are there some rulings that you're willing to correct with regard to your counterclaims? The counterclaims have been voluntarily dismissed at this point, all except for two of them. There were originally five that had to do with damage to the property, things like that, trespass. So the claim is 2619 with regard to all five counts was denied. So you're saying that since this, these have been voluntarily dismissed. It's a moot issue. I don't know when. We don't know that based on the record. Yeah. What's happened after the appeal. No. No. Before the notice of appeal was filed, the counterclaims had been voluntarily dismissed, all except for two, which is I had filed some counterclaims for adverse possession myself, saying that let's assume that Mr. Rupert can make a claim for adverse possession and let's say he got title. My clients had been paying taxes on the land for more than seven years, so we would then adversely possess back. I'm sorry. The order, and he goes into great length about his counterclaims, the counts. Which order are you talking about? Is it the one, because Mr. Rupert appealed from two separate. February 27, 2017. Okay. That's a prior order. That's not the final order of the case. That's from further back in the proceedings. Okay. Because count one, or excuse me, count two of Rupert's complaint was dismissed at that time. It wasn't until 2018 that the other count was dismissed. So the order that you're looking at, there's two of them that are being appealed. I see that. Yes. Yeah. So as far as the counterclaims are concerned, I've already voluntarily dismissed them. I believe that issue is moot. One of the issues that comes up in this other order is it says, since count two, quiet title, had previously been dismissed with leave to amend and since plaintiff has chosen not to amend, count two is hereby dismissed with righteous will. Yes. That order is inconsistent with what the judge did on the record. Do you agree with that or not? I don't agree with that. On the record, the judge said that if Rupert could bring him some sort of authority for his position, which was that he has title to this property already without adjudicating it, I understand, I think, that you can have title to the property, colorable title, after the 20-year period, and that would pass by operation of law. But you still have to adjudicate that at some point. The court is going to have to find that, okay, yes, back in 1979, that's when your title matured, but without having any court adjudicate that, I don't know how you get there. Well, there's an issue in my mind of waiving under the circumstances. You can't waive or if you don't amend and the court tells you to amend? I believe yes. That's why I'm wondering if there was confusion on the part of the complaint, whether or not you had the right to amend. Absolutely. The court made it very clear, and I can, if you would like, I can supplement with a letter referring to the exact page of the transcript. I know exactly where it is in the record. Yeah. The transcript, I mean, clearly says the judge is giving him 14 days to refile the complaint. Well, it doesn't say the complaint. Or the count. They've already done, they've already taken care of count two previously, and then there's reference to amending 14 days later, and then this order comes out in March that seems to say you have the right to amend. But it says that in the transcript. There may be some confusion whether you might have had the right to amend this complaint or not. Absolutely. The judge gave him the right on the record. It's within the transcripts that the judge actually gave him the right to bring a quiet title claim with some case law supporting his assertion that he doesn't have the same burden of proof for a quiet title matter. Because the judge's understanding and my understanding, at least with the arguments made at the trial court level, was that Mr. Rupert was arguing that he did not have to actually prove up an adverse possession claim if he brought it under the label quiet title. That, you know, he's saying, yes, I acquired title by adverse possession, but it already happened by operation of law, and just because I allege it, I don't have to actually prove it up. If you look at the February 27 order, which is why I started in on that, it says at the very bottom, for the reasons stated on the record, this court expressly rejects the legal theory of plaintiff, basically has to count two. It doesn't say that he can amend. Then in the last paragraph, the court grants plaintiff's motion to withdraw his most recent answer in affirmative defenses, and then it's to your counterclaim, and then it says plaintiff to file appropriate pleadings within 14 days, so the 14 days was in reference to, and in the paragraph, it deals with your motion to withdraw the answer. But then the March order says that plaintiff had 14 days to amend, so I don't see that in the February order. There seems to be an inconsistency in Judge Campanella's orders as to whether plaintiff had the right to amend. He said it on the record. Go ahead. Judge Campanella said on the record at that February hearing that Rupert had the right to amend the count for quiet title. He said it on the record and referenced, you know, as stated in the record in his order. Okay. Yes. Thank you very much for your argument. Thank you, Your Honor. Mr. Dowling, I'm sure you have nothing to say, right? So you may proceed. Well, I'm going to try to answer some of your questions. It was a motion to reconsider what I filed that brought up the point about whether or not I could, the discrepancy in the trial court's order regarding the dismissal of count 2 of the complaint in February versus a subsequent order that said on the record, you know, we're dismissing it with prejudice. And that's laid out in my appendix starting at page A179, but it lays out the fact that the ---- my motion to reconsider, but it laid out the fact that the court said something differently over here in February than he did in this other order dismissing it. So you gave him 14 days to amend? No, there was no 14 days to amend. I mean count 2. I'm talking about count 2. In the transcript, he said, I'll give you 14 days to bring me, you know, or send me a case or do a case. I gave him Joyner v. Jansen, quoted it to him then. And, you know, that was on the quiet title. He basically didn't change his mind is what he said. Give me any other case you want and I might change my mind. So which order would it be that didn't change his mind? The February 27th order that would have dismissed count 2 of the Second Amendment complaint on the quiet title. So the March 6th order where he says you were given 14 days and you choose not to amend? But there was nothing that was ñ I was never granted leave to amend in the first place. He dismissed it under 269. So you believe you weren't granted leave? That is correct. I mean it's not even in the transcript. So the transcript again was you say it's A-1. Well, that's my motion to reconsider. Okay. Where can you ñ February 27th. Transcript on February 27th. It is on record 105. It starts on 104. The court says the title vests, and my point is I'm going to stick with my guns. You're dead wrong. Title vesting to me is a legally adjudicated title to disputed property. Title vesting in you is 20 years, and I'm the winner. Nobody can touch me. That's where we disagree. So find me whatever you need to find me to give me in the next 14 days, and I will change my mind. That's all it was. So on the edge you submit a case law on February 27th. And I cited in the case law and gave in the case law. And then we have the March. And then the March. Then I laid it out in more detail on the March 6th in the motion to reconsider. And then we have his order. And then of course we have the May 5th order. And then the subsequent July 10th order. May 6th order. Yes, I'm sorry. Insofar as just addressing the Rule 216 request to admit, Rule 216 provides that I can admit in part, deny in part, or object. And I don't think that's been raised. I'm sorry? I don't think the request for admit has been raised as an issue. Well, I just wanted you to answer that question. No, I was interested in the sanctions because that is reserved in its order. And quite truthfully, I don't remember if he then, when he voluntarily dismissed everything, he denied those motions, denied those as well. I believe he did, at least on the record. But I can't swear to it. The Klingel case, though, is 100% wrong in her recitation. It doesn't apply in this case whatsoever. Why? Well, again, it is, in that Flickr case, they were interpreting Section 13110, which was color, title, payment of taxes for seven years. They brought, they were not interpreting Section 13101. And by no stretch of the imagination do the facts that were in Klingel say that, if you want to change the names, you have to have a title holder. And that's also in Joyner v. Danson. And that's also in Joyner v. Danson. And the other cases I've cited in my brief, it is an affirmative, it's an absolute bar to a record title owner bringing a title holder to a record title holder to repossess property or reenter property that they have ignored for 20 years. That's the basis of adverse possession. So her reliance upon it is 100% wrong. It doesn't apply here. Again, going back to what I started with, given Wells' admission that, not only in her brief but here before the court, that the trial court erred in dismissing count two of the supplemented complaint regarding quiet title, it should be remanded. Thank you both. Thank you, everyone. Thank you. No matter what you take from your advisement. Any other questions, of course?